**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.

Natasha Beckmann, Thomas Brush,
Ryan Estey, Emeka Ofuokwu, and
Roseann Stockman,

      Plaintiffs,
         v.

ROYAL CARIBBEAN CRUISES LTD.,

      Defendant.
_____/

                          **COMPLAINT –**
               **JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

      Plaintiffs Natasha Beckmann, Thomas Brush, Ryan Estey, Emeka Ofuokwu, and Roseann Stockman hereby sue Defendant, ROYAL CARIBBEAN CRUISES LTD., and for good cause allege:

## INTRODUCTION, JURISDICTION AND PARTIES

1.      This instant matter arises out of Defendant Royal Caribbean Cruises Ltd.'s knowing and intentional decision to sail its cruise ship directly into the path of a gigantic winter storm.  On Saturday, February 6, 2016, Defendant intentionally sailed the *Anthem of the Seas*, carrying more than 4,000 paying passengers, **including nearly 30 deaf passengers**, directly into the path of a Hurricane.  These thousands of passengers were subjected to hours of sheer terror as the gigantic cruise ship was battered by hurricane force winds and more than 30 foot waves.  This terror was amplified by the recent *El Faro* tragedy, wherein a cargo ship knowingly sailed into a hurricane and 33 crewmembers all perished.  Just months after one of the worst maritime tragedies in recent

1
Lipcon, Margulies, Alsina & Winkleman, P.A.
www.Lipcon.com

history, Defendant RCCL's knowing, intentional and reckless conduct subjects RCCL to the imposition of punitive damages.

2.      The Plaintiffs in this matter are a group of deaf passengers who were not provided with even the most basic emergency information during this narrowly averted disaster.  Defendant did not utilize any qualified ASL interpreter during this period of time, or any other form of auxiliary aid, to communicate critical updates to Plaintiffs, that the other passengers could access, including information about safety, storm status, meals and delivery of water, the Captain's Orders, and when it was finally safe to leave their cabins.  As such, the sheer terror (as described by one passenger as "like being on a rollercoaster you could not get off, and without any seatbelt") was exponentially amplified because these deaf passengers were kept completely in the dark as to what was going on and what Defendant was doing (if anything) to keep them safe.

3.      This action seeks injunctive relief, compensatory damages, punitive damages, statutory attorneys' fees and costs, and all other such relief provided for under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101A, Section 504 of the Federal Rehabilitation Act, 29 U.S.C. § 794, *et seq.,* the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12, and under principles of negligence pursuant to the General Maritime Law.

## JURISDICTIONAL ALLEGATIONS

4.      This Honorable Court has subject matter jurisdiction over Plaintiffs' claims arising under the federal Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, pursuant to 28 U.S.C. § 1331 insofar as such claims arise under the laws of the United States of America. Plaintiffs seek declaratory and injunctive relief to readdress the deprivation of the rights secured to them by the ADA, 42 U.S.C. § 12101, *et seq.*

5.      This Honorable Court has supplemental subject matter jurisdiction over the claims of the State of New Jersey as set forth in this Complaint pursuant to 28 U.S.C. § 1367 insofar as these claims are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Plaintiffs seek declaratory and injunctive relief, and other such statutory damages, to redress the deprivation of the rights secured to them by the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12.

6.      Additionally and/or alternatively, complete diversity exists amongst the parties.  The matter in controversy exceeds the required amount, exclusive of interest and costs.  Should diversity not exist, then this matter is also brought under the admiralty and maritime jurisdiction of this Honorable Court.

7.      Venue is proper within this District pursuant to 28 U.S.C. § 1391.  Plaintiffs were required to file suit in this district pursuant to the cruise ship passenger ticket contract.

8.      Plaintiffs Natasha Beckmann, Thomas Brush, and Roseann Stockman are residents of the state of New York.

9.      Plaintiffs Ryan Estey and Emeka Ofuokwu are residents of the state of Massachusetts.

10.     Defendant is a corporation incorporated under the laws of Liberia having its principal place of business in Florida.

11.     Defendant is a private entity that owns, leases, operates, and/or manages a place of public accommodation, the vessel *Anthem of the Seas* operating in United States' water or those of its territories, as defined by Title III of the ADA, 42 U.S.C. §§ 12181(6), (7), and 28 C.F.R. § 36.104.

12.     Upon information and belief, Defendant is a recipient of federal financial assistance.

13.    Defendant's vessel, *Anthem of the Seas*, includes places of public accommodations, *inter alia*, cabins, dining venues, specialty restaurants, bars and lounges, swimming pools, performance and movie theaters, internet cafes, spas and beauty salons, gymnasiums and outdoor jogging tracks, medical and auxiliary services (i.e., infirmary or medical center), and youth programs. 42 U.S.C. §§ 12181(6), (7) and 28 C.F.R. § 36.104.

14.    Defendant at all times material, personally, or through an agent;

    a.    Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b.    Was engaged in substantial activity within this state;

    c.    Operated vessels in the waters of this state;

    d.    Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

    e.    The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state.

    f.    The Defendant was engaged in the business of providing to the public and to the Plaintiffs in particular, for compensation, vacation cruises aboard the vessel, *Anthem of the Seas*.

15.    Defendant is subject to the jurisdiction of the Courts of this state.

16.    At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the vessel, *Anthem of the Seas*.

**<u>GENERAL ALLEGATIONS COMMON TO ALL COUNTS</u>**

17.    Plaintiff Natasha Beckmann is a person with a disability as that term is defined by the ADA

and the NJLAD.  She is deaf.

18.     The language in which Plaintiff Natasha Beckmann receives and expresses information is American Sign Language ("ASL").   She uses qualified ASL interpreters to communicate effectively with hearing people.

19.     Plaintiff Thomas Brush is a person with a disability as that term is defined by the ADA and the NJLAD.  He is deaf.

20.     The language in which Plaintiff Thomas Brush receives and expresses information is ASL. He uses qualified ASL interpreters to communicate effectively with hearing people.

21.     Plaintiff Ryan Estey is a person with a disability as that term is defined by the ADA and the NJLAD.  He is deaf.

22.     The language in which Plaintiff Ryan Estey receives and expresses information is ASL. He uses qualified ASL interpreters to communicate effectively with hearing people.

23.     Plaintiff Emeka Ofuokwu is a person with a disability as that term is defined by the ADA and the NJLAD.  He is deaf.

24.     The language in which Plaintiff Emeka Ofuokwu receives and expresses information is ASL.  He uses qualified ASL interpreters to communicate effectively with hearing people.

25.     Plaintiff Roseann Stockman is a person with a disability as that term is defined by the ADA and the NJLAD.  She is deaf.

26.     The language in which Plaintiff Roseann Stockman receives and expresses information is ASL.  She uses qualified ASL interpreters to communicate effectively with hearing people.

27.     At all times relevant to the facts of this Complaint, Defendant's employees and staff aboard its vessel, the *Anthem of the Seas*, acted as agents and/or representatives of Defendant.

28.     At all times relevant to the facts of this Complaint, Defendant, through its agents and representatives, knew that Plaintiffs were deaf.

29.     On Saturday, February 6, 2016, Defendant knowingly and intentionally decided to sail the *Anthem of the Seas*, **carrying more than 4,000 paying passengers, including 30 deaf passengers, directly into the path of a Hurricane**.  More than 4,000 passengers were subjected to hours of sheer terror as the gigantic cruise ship was battered by hurricane force winds and more than 30 foot waves.  This terror was amplified by the recent *El Faro* tragedy, wherein a cargo ship knowingly sailed into a hurricane and 33 crewmembers all perished.  Just months after one of the worst maritime tragedies in recent history, Defendant RCCL's knowing, intentional and reckless conduct subjects RCCL to the imposition of punitive damages.

30.     Prior to setting sail on Saturday February 6, 2016, there were numerous forecasts which predicted the storm which the Anthem of the Seas encountered.  At approximately 4:00 p.m. on Wednesday, February 3, 2016, the National Oceanic and Atmospheric Administration's (NOAA) Ocean Prediction Center first headlined the possibility of storm forced winds for Sunday, February 7, 2016, along the eastern coast near Cape Hatteras, North Carolina. The NOAA indicated that winds would increase from 35-50 knot during the day to 40-55 knots Sunday night. The NOAA also forecasted seas to increase from 12-20 feet during the day to 15-28 feet Sunday night.

31.     At approximately 4:20 p.m. on Friday, February 5, 2016, the NOAA issued a storm warning for Sunday, February 7, 2016, with winds of 30-55 knots during the day, increasing to 40-55 knots Sunday night. The NOAA also forecasted seas at 11-18 feet during the day and seas at 18-25 feet during the night.

32.     The subject vessel left for its voyage from Cape Liberty Port in Bayonne, New Jersey at

approximately 4:00 p.m. on Saturday, February 6, 2016.  Concurrent with embarkation, at approximately 3:34 p.m. on Saturday, February 6, 2016, the **NOAA upgraded the storm warning to a Hurricane Force Wind Warning**. The NOAA was forecasting winds of 65 knots and 30 foot seas for Sunday, February 7, 2016.

33.     As the vessel was leaving Port, Captain Claus Andersen informed the passengers that there was a weather system building along the east coast and he intended to outrun the growing storm. In other words, Defendant was knowingly sailing directly towards a quickly intensifying hurricane.

34.     The below image shows the projected path and the gigantic storm that Defendant knowingly sailed through:



35.     As predicted, by 3:40 p.m. on Sunday, February 7, 2016, the hurricane-force winds and rough seas were battering the vessel so severely that Captain ordered all passengers to be confined in their staterooms until further notice.

36.     At approximately 3:45 p.m. on Sunday, February 7, 2016, Plaintiffs observed multiple passengers evacuating the pool area, restaurants, shops and main gathering areas.  Plaintiffs, **all of whom are deaf**, did not know why passengers were leaving in large crowds.

37.     Plaintiff Brush asked Defendant's employee where everyone was going.  The Employee told Plaintiff Brush to go to his room immediately.

38.     Other Plaintiffs pieced together information from other passengers about the Captain's order to retreat to their staterooms.

39.     Although Defendant had a smartphone app to announce the Captain's Order(s), Defendant did not use the app to communicate with its more than 30 deaf passengers.

40.     Plaintiffs, along with the rest of the passengers aboard the *Anthem of the Seas*, were then confined to their staterooms for approximately twelve hours.

41.     While confined to their staterooms for approximately twelve hours, passengers were holding onto their beds and/or whatever they could find in order to keep from falling due to the severe crashing of waves and listing of the vessel.  Furniture was overturned and tossed throughout the vessel; broken glass littered all levels of the vessel; a portion of the ceiling collapsed; elevators became inoperable; waves crashed through open and/or shattered balcony doors; and water rushed in through numerous other areas of the vessel.

42.     Waves were crashing over the top of the lifeboats tethered along the side of the *Anthem of the Seas* as the ship listed heavily to either side.  At times the vessel listed (tilted) as far as 45

degrees and the passengers were violently thrown across their cabins.

43.     Passengers scrambled to search for life jackets or floatation devices but were unable to do so.  There were numerous families with small children aboard the vessel and parents did their best to protect themselves and their young children who were crying uncontrollably and screaming in sheer terror.  These are examples of the extensive damage done to the vessel in the storm:





44.     Throughout the storm for approximately twelve hours on February 7, 2016 and continuing to February 8, 2016, Defendant's crew provided the passengers aboard the *Anthem of the Seas* with instructions, information, and status updates regarding the storm __*only*__ over the vessel's loudspeakers.

45.     Plaintiffs made multiple requests to Defendant's agents for qualified ASL interpreters to communicate the Captain's announcements and updates over the loudspeakers.

46.     Defendant refused to allow any interpreter to visit the rooms of Plaintiff to provide information the hearing passengers were receiving over the loudspeakers.

47.     Plaintiffs' televisions were not equipped with closed captioning, and therefore, Plaintiffs could not receive updates from Defendant on the internal network.

48.     Defendant did not utilize any qualified ASL interpreter during this troubling period of time,

or any other form of auxiliary aid, to communicate important updates to Plaintiffs, that the other passengers could access including information about meals and delivery of water, storm status information, the Captain's Orders, and when it was finally safe to leave their rooms.

49.     Several Plaintiffs did know they could exit their cabins until several hours after the hearing passengers were notified that it was safe to leave the cabins.

50.     For approximately twelve hours on February 7, 2016 and continuing to late morning on February 8, 2016, Defendant's refusal to provide effective communication with Plaintiffs left Plaintiffs isolated, confused, scared, anxious, and without any information regarding the status of the storm, meals, duration of the lockdown, or when to exit.

51.     On Monday, February 8, 2016, Defendant decided to turn the *Anthem of the Seas* around and head back to New Jersey.

52.     Defendant provided each passenger, including Plaintiffs, a 50% discount for a RCCL cruise to sail anytime in the next year.

53.     Plaintiffs wish to use their 50% discount coupon toward the purchase of another cruise on the *Anthem of Seas* ship, but cannot do so where the ships are not compliant with the ADA and unable to provide deaf passengers with even the most basic information in emergency situations.

54.     Each and all of the foregoing conditions, including but not limited to, the impending dangerous weather and sea conditions and the failure to effectively communicate emergency information to Plaintiffs, were known and/or should have been known to Defendant prior to the time Defendant decided to sail on February 6, 2016.

55.     As such, Defendant knowingly, intentionally and recklessly decided to sail directly into the path of a hurricane force storm, thereby placing the lives at risk of each and every one of the

passengers and crew aboard that ship.

56.     As a result of Defendant's actions and its deliberate failure to provide effective communication, Plaintiffs were deprived of qualified interpreters, the full and equal use of and benefit from the programs, services, and benefits of Defendant, as well as the ability to have effective communication with Defendant, which Defendant provides to its non-disabled passengers.

57.     As a further result of Defendant's actions and deliberate failure to provide effective communication, Plaintiffs suffer and continue to suffer emotional injuries, including, but not limited to, fear, anxiety, humiliation, embarrassment, and despair.

## COUNT I – VIOLATION OF THE ADA

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs 1 through 57 as though alleged originally herein and further alleges:

58.     Defendant is an entity covered by Title III of the ADA, 42 U.S.C. § 12101, *et seq.*

59.     Defendant is a private entity that owns, leases, operates, and/or manages a place of public accommodation, the vessel *Anthem of the Seas* operating in United States' water or those of its territories, as defined by Title III of the ADA, 42 U.S.C. §§ 12181(6), (7), and 28 C.F.R. § 36.104.

60.     Defendant's vessel, *Anthem of the Seas*, includes places of public accommodations, *inter alia*, cabins, dining venues, specialty restaurants, bars and lounges, swimming pools, performance and movie theaters, internet cafes, spas and beauty salons, gymnasiums and outdoor jogging tracks, medical and auxiliary services (i.e., infirmary or medical center), and youth programs. 42 U.S.C. §§ 12181(6), (7) and 28 C.F.R. § 36.104.

61.     During all relevant time periods of each Plaintiffs' experiences aboard Defendant's vessel on or about February 7, 2016 and continuing until February 8, 2016, Defendant intentionally failed to provide auxiliary aids and services necessary for equal and effective communication with Defendant in violation of the prohibition against discrimination based on disability contained in Title III of the ADA, 42 U.S.C. § 12182, *et seq.*

62.     During all relevant time periods of each Plaintiffs' experiences aboard Defendant's vessel on or about February 7, 2016 and continuing until February 8, 2016, Defendant intentionally failed to provide qualified sign language interpreters or other auxiliary aids and services necessary for equal and effective communication with Defendant in violation of the prohibition against discrimination based on disability contained in Title III of the ADA, 42 U.S.C. § 12182, *et seq.*

63.     During all relevant time periods of each Plaintiffs' experiences aboard Defendant's vessel on or about February 7, 2016 and continuing until February 8, 2016, Defendant denied Plaintiffs the opportunity to benefit from its services, facilities, privileges, advantages, and accommodations that were equal to that afforded to other individuals who are not deaf in violation of the prohibition against discrimination based on disability contained in Title III of the ADA, 42 U.S.C. § 12182, *et seq.*

64.     During all relevant time periods of each Plaintiffs' experiences aboard Defendant's vessel on or about February 7, 2016 and continuing until February 8, 2016, Defendant intentionally failed to make reasonable modifications in its policies, practices, and/or procedures as necessary to afford Plaintiffs with its goods, services, facilities, privileges, advantages, and/or accommodations in violation of the prohibition against discrimination based on disability contained in Title III of the ADA, 42 U.S.C. § 12182, *et seq.*

Lipcon, Margulies, Alsina & Winkleman, P.A.
www.Lipcon.com

65.     During all relevant time periods of each Plaintiffs' experiences aboard Defendant's vessel on or about February 7, 2016 and continuing until February 8, 2016, Defendant intentionally failed to take such steps necessary to ensure that Plaintiffs were not excluded, denied services, segregated, and/or otherwise treated differently that individuals who are not deaf because of the absence of auxiliary aids and services in violation of the prohibition against discrimination based on disability contained in Title III of the ADA, 42 U.S.C. § 12182, *et seq.*

66.     As a result of Defendant's actions and its failure to act, Plaintiffs suffered the harm described in this Complaint.

## <u>COUNT II – VIOLATION OF THE FEDERAL REHABILITATION ACT</u>

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs 1 through 57 as though alleged originally herein and further alleges:

67.     Defendant is upon information and belief, a recipient of federal funding and/or financial assistance or benefits and is an entity covered by Section 504 of the Federal Rehabilitation Act, 29 U.S.C. § 794, *et seq.*

68.     Defendant is a private entity that owns, leases, operates, and/or manages a place of public accommodation, the vessel *Anthem of the Seas* operating in United States' water or those of its territories, as defined by Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*

69.     Defendant's vessel, *Anthem of the Seas*, includes places of public accommodations, *inter alia*, cabins, dining venues, specialty restaurants, bars and lounges, swimming pools, performance and movie theaters, internet cafes, spas and beauty salons, gymnasiums and outdoor jogging tracks, medical and auxiliary services (i.e., infirmary or medical center), and youth programs. 29 U.S.C. § 794.

70.     During all relevant time periods of each Plaintiffs' experiences aboard Defendant's vessel on or about February 7, 2016 and continuing until February 8, 2016, Defendant intentionally failed to provide auxiliary aids and services necessary for equal and effective communication with Defendant in violation of the prohibition against discrimination based on disability contained in 29 U.S.C. § 794 and its implanting regulations.

71.     During all relevant time periods of each Plaintiffs' experiences aboard Defendant's vessel on or about February 7, 2016 and continuing until February 8, 2016, Defendant intentionally failed to provide qualified sign language interpreters or other auxiliary aids and services necessary for equal and effective communication with Defendant in violation of the prohibition against discrimination based on disability contained in 29 U.S.C. § 794 and its implanting regulations.

72.     During all relevant time periods of each Plaintiffs' experiences aboard Defendant's vessel on or about February 7, 2016 and continuing until February 8, 2016, Defendant denied Plaintiffs the opportunity to benefit from its services, facilities, privileges, advantages, and accommodations that were equal to that afforded to other individuals who are not deaf in violation of the prohibition against discrimination based on disability contained in 29 U.S.C. § 794 and its implanting regulations.

73.     During all relevant time periods of each Plaintiffs' experiences aboard Defendant's vessel on or about February 7, 2016 and continuing until February 8, 2016, Defendant intentionally failed to make reasonable modifications in its policies, practices, and/or procedures as necessary to afford Plaintiffs with its goods, services, facilities, privileges, advantages, and/or accommodations in violation of the prohibition against discrimination based on disability contained in 29 U.S.C. § 794 and its implanting regulations.

74.     During all relevant time periods of each Plaintiffs' experiences aboard Defendant's vessel on or about February 7, 2016 and continuing until February 8, 2016, Defendant intentionally failed to take such steps necessary to ensure that Plaintiffs were not excluded, denied services, segregated, and/or otherwise treated differently that individuals who are not deaf because of the absence of auxiliary aids and services in violation of the prohibition against discrimination based on disability contained in 29 U.S.C. § 794 and its implanting regulations.

75.     As a result of Defendant's actions and its failure to act, Plaintiffs suffered the harm described in this Complaint.

## <u>COUNT III – VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION</u>

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs 1 through 57 as though alleged originally herein and further allege:

76.     With regard to the Plaintiffs' deafness, all Plaintiffs are individuals with a "disability" within the meaning of New Jersey Statutes Annotated section 10:5-5(q).  Additionally, Defendant regarded Plaintiffs as individuals with a "disability" within the meaning of New Jersey Statutes Annotated section 10:5-5(q), and Plaintiffs are individuals with records of a disability within the meaning of New Jersey Statutes Annotated section 10:5-5(q).

77.     Defendant is an entity covered by New Jersey Statutes Annotated section 10:5-5(l).

78.     Defendant is a private entity that owns, leases, operates, and/or manages a place of public accommodation, the vessel *Anthem of the Seas* operating in United States' water or those of its territories, as defined by New Jersey Statutes Annotated section 10:5-5(l).

79.     Defendant's vessel, *Anthem of the Seas*, includes places of public accommodations, *inter alia*, cabins, dining venues, specialty restaurants, bars and lounges, swimming pools, performance

and movie theaters, internet cafes, spas and beauty salons, gymnasiums and outdoor jogging tracks, medical and auxiliary services (i.e., infirmary or medical center), and youth programs. N.J. Stat. Ann. § 10:5-5(l).

80.     During all relevant time periods of each Plaintiffs' experiences aboard Defendant's vessel on or about February 7, 2016 and continuing until February 8, 2016, Defendant intentionally failed to provide auxiliary aids and services necessary for equal and effective communication with Defendant in violation of the prohibition against discrimination based on disability contained in New Jersey Statutes Annotated section 10:5-12.

81.     During all relevant time periods of each Plaintiffs' experiences aboard Defendant's vessel on or about February 7, 2016 and continuing until February 8, 2016, Defendant intentionally failed to provide qualified sign language interpreters or other auxiliary aids and services necessary for equal and effective communication with Defendant in violation of the prohibition against discrimination based on disability contained in New Jersey Statutes Annotated section 10:5-12.

82.     During all relevant time periods of each Plaintiffs' experiences aboard Defendant's vessel on or about February 7, 2016 and continuing until February 8, 2016, Defendant denied Plaintiffs the opportunity to benefit from its services, facilities, privileges, advantages, and accommodations that were equal to that afforded to other individuals who are not deaf in violation of the prohibition against discrimination based on disability contained in New Jersey Statutes Annotated section 10:5-12.

83.     As a result of Defendant's actions and its failure to act, Plaintiffs suffered the harm described in this Complaint.

Lipcon, Margulies, Alsina & Winkleman, P.A.
www.Lipcon.com

## COUNT IV – NEGLIGENCE

Plaintiff re-alleges, adopts, and incorporates by reference the allegations in paragraphs 1 through 57 as though alleged originally herein and further alleges:

84.    It was the duty of Defendant to provide Plaintiff and all others similarly situated with reasonable care under the circumstances.

85.    On or about February 6, 2016, and continuing until February 7, 2016, Defendant and/or its agents, servants, and/or employees breached its duty to provide Plaintiffs with reasonable care under the circumstances.

86.    Plaintiffs were injured due to the fault and/or negligence of Defendant RCCL, and/or its agents, servants, and/or employees as follows:

a.    Failure to use reasonable care to provide and maintain a safe voyage for Plaintiffs, fit with proper and adequate machinery, crew, communication methods and equipment; and/or

b.    Knowingly sailing the subject vessel into severe weather conditions; and/or

c.    Failing to have proper policies and procedures in place to determine whether to sail into dangerous weather conditions; and/or

d.    Deciding to sail the vessel despite severe weather warnings; and/or

e.    Failing to have adequate technology capable of properly monitoring weather conditions in real time;

f.    Sailing the vessel into hurricane-force winds; and/or

g.    Sailing the vessel into 30 foot seas; and/or

18
Lipcon, Margulies, Alsina & Winkleman, P.A.
www.Lipcon.com

h.   Failing to turn back the vessel and/or divert the vessel and/or seek safe harbor before and encountering the storm;

i.   and/or Failing to warn passengers, including Plaintiffs, of the dangers of leaving port in Bayonne, New Jersey with the vessel in light of the expected weather and sea conditions; and/or

j.   Failing to take a safe route from Bayonne, New Jersey, to Cape Canaveral, Florida; and/or

k.   Failing to alter route to a safe route while at sea; and/or

l.   Exposing the vessel to weather and sea conditions that the vessel was unfit for; and/or

m.   Failing to promulgate and/or enforce adequate policies and procedures to prevent the vessel from leaving port into an expected storm; and/or

n.   Failing to promulgate and or enforce adequate policies and procedures to require the vessel to turn around and/or seek safe harbor when encountering an expected storm became likely; and/or

o.   Failing to use reasonable care to promulgate and/or enforce adequate policies and procedures to ensure that the vessel was operated in a safe weather conditions; and/or

p.   Exposing its passengers to hurricane force weather conditions; and/or

q.   Failure to provide adequate training, instruction, and supervision to the captain and crew; and/or

r.  Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or profits; and/or

s.  Failure to adequately maintain the Anthem of the Seas, its engines and machinery, so as to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

t.  Failure to adequately inspect the *Anthem of the Seas*, its engines and machinery, so as to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

u.  Failure to promulgate policies and/or procedures aimed at preventing the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

v.  Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan to protect the health and welfare of passengers during an emergency; and/or

w.  Failure to determine and/or appreciate the hazards associated with operating the subject vessel's propulsion system while encountering severe weather and sea conditions; and/or

x.  Knowing, as a result of previous similar incidents, of the likelihood of a threat to passenger safety resulting from all of the above, yet failing to take corrective action and/or implement policies and procedures aimed at preventing and/or mitigating the harmful effects of the of the subject incident; and /or

y.  Failure to promulgate adequate storm avoidance policies aimed at ensuring the safety of passengers; and/or

z.  Failure to employ an in-house meteorological staff tasked with monitoring storms and/or sea conditions to ensure the safety of passengers.

87.  At all material times, Defendant had exclusive custody and control of the vessel, *Anthem of the Seas*.

88.  Defendant knew of the foregoing conditions causing Plaintiffs injuries and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

89.  As a result of the negligence of RCCL, Plaintiffs were injured about Plaintiffs' body and/or extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

## **RELIEF REQUESTED**

Plaintiffs therefore respectfully request that this Court issue the following relief:

90.  Issue a declaratory judgment, holding that Defendant's failure to provide effective and equal communication with Plaintiffs during the emergency period from February 7-8, 2016, was

discriminatory conduct in violation of the Americans with Disabilities Act, §504 of the Federal Rehabilitation Act, and the New Jersey Law Against Discrimination.

91.     To issue an order directing Defendant to cease and desist from failing to provide qualified ASL interpreters, or other auxiliary aids and services, to ensure effective communication with Plaintiffs and other deaf passengers in the future.

1.      To issue an order directing Defendant to cease and desist from failing to provide appropriate auxiliary aids and services capable of ensuring effective communication with deaf passengers in connection with emergency announcements, announcements for programs, services, and other inaccessible benefits it provides for non-deaf passengers.

2.      To issue an Order for permanent injunctive relief against Defendant directing Defendant to immediately adopt appropriate emergency response policies and procedures, including, but not limited to: effective and appropriate training for staff and implement technology to communicate announcements to deaf passengers.

3.      Directing Defendant to take all action necessary to effectuate the purposes of the American with Disabilities Act, § 504 of the Federal Rehabilitation Act and the New Jersey Law Against Discrimination, to prevent further violations of those statutes and to correct the discriminatory effects of its past practice of not providing effective communication for deaf people.

4.      Directing Defendant to pay compensatory damages for the physical and emotional harm each Plaintiff suffered as a result of Defendant's actions in an amount in excess of $75,000 to each Plaintiff.

5.      Ordering Defendant to pay punitive damages to each Plaintiff, pursuant to New Jersey Statutes Annotated section 10:5-3.

6.      Awarding Plaintiffs statutory attorneys' fees and expenses.

7.      Awarding such other and further relief as the Court determines is reasonable and just.

**Dated June 24, 2016**

*Respectfully submitted,*

**LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.**
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By: */s/ Michael Winkleman*
**MICHAEL A. WINKLEMAN**
Florida Bar No. 36719
E-mail: mwinkleman@lipcon.com

*AND*

**GILBERT LAW PLLC**
Heather M. Gilbert
Minnesota Bar NO. 0392838
Terra L. Frazier
Minnesota Bar NO. 0397465
Winsor Office Plaza
1935 County Road B2 W, Suite 402
Roseville, MN 55113
Telephone: (651) 340-9642
Fax: (651) 344-0835
heather@gilbertlawpllc.com
terra@gilbertlawpllc.com
*Pro Hac Vice Forthcoming*

**COUNSEL FOR PLAINTIFFS**